315 WEST 97TH STREET REALTY CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9898. Promulgated January 28, 1928.

*William H. White, jr., Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

370

MURDOCK: The petitioner alleged that the Commissioner erred in failing "to allow a large paid-in surplus as part of the taxpayer's invested capital for each of the years involved." The deficiency letter shows that for the year 1920, the Commissioner determined that at the beginning of the year the petitioner's invested capital consisted of $5,000 paid for capital stock, and a surplus of $39,798.92, and that during the year a certain amount as dividends was paid from surplus, which, when properly prorated, reduced the invested capital to be allowed for the year to the amount of $39,133.75. The balance sheets at the time showed deficits and perhaps the dividends were liquidating dividends. For the year 1921, the deficiency notice states that inasmuch as the excess-profits tax is greater under section 301 than that under section 302, the benefit of the latter section has been given.

The answer denies any error in the computation of invested capital and as a proposition of law states that "the taxpayer's invested capital has been properly computed under sections 326 of the Revenue Acts of 1918 and 1921, by taking into consideration the market value of the property paid in for stock at date of organization as near as may be determined." Before any evidence was taken, counsel for the respondent stated that there was an issue in regard to the value of real estate at 315 West 97th Street, New York City, and that there had been allowed a value of $410,000 on the property, of which

amount $270,000 was attributed to the building and $140,000 was attributed to the land.

Under these circumstances we assume that the issue in regard to invested capital is limited to the question of the value of the property at the time it was transferred to the corporation and that once that value is determined the tax for 1921 will not be less under section 302 than under section 301 and the parties can have no further difficulty in arriving at the invested capital for the taxable years; in short, that if the value of the property was not more than $410,000 at the time it was transferred to the corporation, then the determination of the Commissioner must be approved, because otherwise his computation of invested capital is not questioned, and, on the other hand, if the value of the property at the time it was transferred to the corporation was more than $410,000, the determination of that value by this Board will enable the parties to compute the true tax liability of the petitioner for the taxable years without further controversy, inasmuch as the Commissioner's method of computing invested capital is not questioned, provided he uses as a starting point the proper value for the property at the time of the transfer.

The petitioner offered proof that at the time the corporation was formed tangible property was paid in for stock, which tangible property at the time paid in had an actual cash value clearly and substantially in excess of the par value of the stock issued for it, that such excess amounted to $296,162.67 and should be treated as paid-in surplus in accordance with section 326 of the Revenue Acts of 1918 and 1921. From this evidence we hold that the petitioner at the time of incorporation had a paid-in surplus of $296,162.67 and the deficiencies for the years in question must be redetermined taking into consideration our finding of fact that the property at the time transferred to the corporation had a value of $650,000, which gave rise to a paid-in surplus in the above amount.

Although on the income-tax return a deduction was claimed which included compensation for each of four officers, the petitioner now contends for the deduction of alleged salaries of only two of these officers. The corporation in paying money to these two men might have been doing one of two things, it might have been compensating them for their services as officers, or it might have been making a distribution to them as stockholders. The Commissioner determined that it was making a distribution and the petitioner would have this Board reverse the Commissioner and hold that $3,600 was paid or incurred by the corporation for personal services rendered by these two officers, and that it was a reasonable compensation for personal services actually rendered by them. When payments are made for services the amounts usually depend upon

the services rendered. Here we see that two officers who rendered no services received just as much as those who performed services. Each one of the four officers owned one-fourth of the stock and the corporation apparently paid each the same amount. The effect of the payments was the same as that which would have resulted from a distribution. From the facts before us, all of which we have set out in our findings of fact, we can not say that the Commissioner was in error.

> *Judgment will be entered in accordance with the foregoing opinion on notice of 15 days, under Rule 50.*